## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| SOVEREIGN PEAK VENTURES, LLC, § § § | |
| Plaintiff, § | |
| § | **JURY TRIAL DEMANDED** |
| v. § | |
| § | |
| HP INC., § | **C.A. NO. 6:22-cv-918** |
| § | |
| Defendant. § | |
| § | |
| § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sovereign Peak Ventures, LLC ("SPV") files this Complaint against Defendant

HP Inc. ("Defendant" or "HP") for infringement of U.S. Patent No. 8,374,152 (the "'152

patent"), U.S. Patent No. 8,442,569 (the "'569 patent"), 8,467,723 (the "'723 patent"), and U.S.

Patent No. 8,792,453 (the "'453 patent"), collectively, the "Asserted Patents."

## THE PARTIES

1.      Sovereign Peak Ventures, LLC is a Texas limited liability company, with a

principal place of business in Allen, TX.

2.      On information and belief, Defendant HP, Inc. ("HP") is a Delaware corporation

with a principal place of business at 1501 Page Mill Road, Palo Alto, California 94304. HP is

registered with the Texas Secretary of State to do business in Texas. HP can be served through its

registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

3.      HP is a multinational information technology company and develops and sells

personal computers and related supplies. HP sells its products to customers, including customers

in this District, in the computer and consumer electronics markets.

1

4.     HP maintains one or more offices within this District, including at 3800 Quick Hill Rd. #100, Austin, Texas 78728.

5.     HP operates and owns the hp.com website, and markets, offers, distributes, and provides technical support for its computer products throughout the United States including in this District.

6.     HP develops, designs, manufactures, distributes, markets, offers to sell, and/or sells infringing products and services within the United States, including in this District, and otherwise purposefully directs infringing activities to this District in connection with its Austin, Texas office; its hp.com website; and its other places of business in Texas and the rest of the United States. Defendant participates in the design, development, manufacture, sale for importation into the United States, offers for sale for importation into the United States, importation into the United States, sale within the United States after importation, and offers for sale within the United States after importation, of computers that infringe the Asserted Patents.

7.     On information and belief, Defendant is engaged in making, using, selling, offering for sale, and/or importing, and/or inducing its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as computers, accused of infringement.

8.     The Asserted Patents were invented by employees of Panasonic Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. Panasonic made numerous innovations in the home appliance, battery, mobile phone, and television industries. Indeed, Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today. In 1991, Panasonic released the Mova P, the smallest and lightest mobile phone on the market, which revolutionized the industry

by showing the demand for a compact, lightweight device. Panasonic also produced the first wide-format plasma display and developed the first digital television for the U.S. market. Panasonic's history of innovation is also borne out by its intellectual property. Indeed, a search of the USPTO database where the patent assignee is "Panasonic" yields over 27,000 matches.

9.      Prior to the filing of the Complaint, SPV attempted to engage HP and/or its agents in good faith licensing discussions related to the Asserted Patents, including by providing HP with access to a data room on September 21, 2021, that contained claim charts detailing HP's use of the Asserted Patents.  At least HP's Deputy General Counsel and Chief of Intellectual Property and its Associate General Counsel received access to the data room.  In October 2021, HP and SPV held technical and licensing discussions. Thereafter, at HP's request, SPV sent on November 3, 2021, technical information in response to HP's questions and in support of SPV's infringement allegations. A second technical and licensing discussion was held on March 6, 2022.During the initial October 28, 2021, discussion SPV provided a non-discriminatory offer to HP to license its portfolio on a worldwide basis, including both implementation and any standards-essential patents in the portfolio, that was reasonable for a license taken in the absence of litigation.  Following the second March 6, 2022, meeting HP refused to engage with SPV or respond to SPV's repeated requests to continue the licensing discussions, thus necessitating litigation. HP's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of SPV's patented technologies without fair compensation to SPV.

10.      Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendant's electronics, such as computers, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries Defendants does business in the U.S., the state of Texas, and in this District.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.     This Court has personal jurisdiction over HP in accordance with due process and/or the Texas Long Arm Statute because, in part, HP "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. & REM. CODE § 17.042(3).

14.     This Court has personal jurisdiction over HP because HP has engaged, and continues to engage in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over HP because HP has committed acts giving rise to SPV's claims for patent infringement within and directed to this District.

15.     For example, HP is subject to personal jurisdiction in this Court because, *inter alia*, it has regular and established places of business in this District, including offices and data centers located at 3800 Quick Hill Rd. #100, Austin, Texas 78728. The Travis County Central Appraisal District (CAD) website indicates that HP owns several other offices and properties in Austin including properties at 7501 N. Capital of Texas Highway, TX 78731; 3301 Hibbets Rd, Austin, TX 78721; 14231 Tandem Blvd, Austin, TX 78728; and 14219 Tandem Blvd, Austin, TX 78728.

16.     HP's Austin offices are regular and established places of business at least because these locations include many members of HP's important teams, including Process and

Capabilities   Manager,   Information   Systems   Architect,   Software   Engineers,   IT Developers/Engineers, and Technical Engineers.

17.     HP's website lists over ninety H-1B labor condition applications for people employed in Austin, Texas. Employees holding an H-1B visa are employed in a specialty occupation that requires "theoretical and practical application of a body of highly specialized knowledge . . . and attainment of a bachelor's or higher degree in the specific specialty… ." See 8 U.S.C. § 1184. HP employees in Austin, Texas are highly specialized and are important to the operation of HP.

18.     HP posts job openings for its Austin office, as well as, openings for other cities within this District, such as Waco.

19.     HP, directly and through its agents, regularly conducts, solicits, and transacts business in this District and elsewhere in Texas, including through its hp.com website. For example, HP employs sales and marketing employees that regularly sell, offer to sell, or otherwise distribute personal computers in this District and elsewhere in Texas.

20.     HP has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, and sold infringing products in Texas, including in this District, and engaged in infringing conduct within and directed at or from this District. The infringing computer products have been and continue to be distributed to and used in this District. HP's acts cause injury to SPV, including injury suffered within this District.

21.     Moreover, on information and belief, HP has previously litigated patent infringement cases before this Court without contesting jurisdiction and venue.

22.     Exercising personal jurisdiction over HP in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to SPV.

23.     In addition, HP has knowingly induced and continues to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

24.     Personal jurisdiction also exists specifically over HP because it, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Best Buy and Walmart) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

25.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because HP has committed acts of infringement in this District and have a regular and established place of business in this District.

26.     With respect to the '152 patent and '569 patent, the Accused Products comprise LTE-enabled devices that are configured to utilize infringing licensed assisted access (LAA) modems on wireless networks, where such devices include, but are not limited to, HP laptop units sold with an Intel XMM 7560 LTE modem (including models Spectre x360 - 13t-aw200 touch, Spectre x360 - 13t touch, Spectre x360 - 13-aw2004nr, Spectre x360 - 13-aw1002nr, Spectre x360

- 13-aw1002nr, Spectre x360 13" + Travel Dock Bundle; HP ProBook 440/450 G9, HP EliteBook 840/860 G9; HP EliteBook Dragonfly G3) and HP laptop units sold with Qualcomm Snapdragon X55 5G modem (including models EliteBook 830/840/850 G8, EliteBook 840 Aero G8; Elite Dragonfly Max, Elite Dragonfly Max w/ Sure View/Recover, Elite Dragonfly G2; EliteBook x360 1030 G8; EliteBook x360 1040 G8), as well as, their components, and processes related to the same. With respect to the '723 patent and '453 patent, the Accused Products comprise LTE-enabled devices that are configured to perform inter-RAT handovers and/or establish a secure tunnel to trusted packet gateways, where such devices include, but are not limited to, HP Ultrabooks with 4G/LTE (EliteBook 830/835 G8, EliteBook 840 G8, EliteBook 840 Aero G8, EliteBook 845/850/855 G8, EliteBook 840/860 G9, ProBook 635 Aero G8, ProBook 440/450 G9); HP Elite Dragonfly (Elite Dragonfly Max, Elite Dragonfly Max w/ Sure View/Recover, Elite Dragonfly G2, EliteBook Dragonfly G3); HP ELITEBOOK X360 1030 (EliteBook x360 1030 G8, EliteBook x360 1030 G8 w/ Sure View/Recover); HP ELITEBOOK X360 1040 (EliteBook x360 1040 G8, EliteBook x360 1040 G8 w/ Sure View); and HP Spectre x360 13" 2-In-1 Convertible 4G LTE Laptop (model units sold w/ Intel XMM 7560 LTE modem), as well as, their components, and processes related to the same.

27.     On information and belief, HP has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least distributors and customers such as Walmart, Best Buy, and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result, HP has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed

the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,374,152)

28.   Plaintiff incorporates paragraphs 1 through 27 herein by reference.

29.   SPV is the assignee of the '152 patent, entitled "Cell Selection System, Cell Selection Method, and Mobile Terminal," with ownership of all substantial rights in the '152 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

30.   The '152 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '152 patent issued from U.S. Patent Application No. 12/739,883.

31.   HP has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '152 patent in this judicial district and elsewhere in Texas and the United States.

32.   HP designs, develops, manufactures, assembles and markets mobile phones and other devices configured to connect to wireless cellular networks.

33.   HP directly infringes the '152 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '152 patent.

34.   For example, HP infringes claim 9 of the '152 patent via the Accused Products, which are configured to connect to wireless cellular networks utilizing infringing LAA modems.

8

35.     The Accused Products comprise a mobile terminal used in a network having a first cell using a first communication protocol and a plurality of second cells which are included in the first cell and use a second communication protocol which is different from that for the first cell, the mobile terminal supporting communications using the first and second communication protocols in both the first and second cells. Each of the Accused Products are mobile phones that are configured to operate in LTE cells including a plurality of LAA cells. LTE cells and LAA cells use different communication protocols.

36.     The Accused Products comprise a first broadcast information receiver for receiving broadcast information of the first cell including cell selection information comprising a common parameter that is commonly used for a judgment on cell selection of all the second cells. For example, the Accused Products include first receiver circuitry that is configured to receive over licensed LTE spectrum cell selection information comprising a common parameter that is commonly used for a judgment on cell selection of all the second cells from the LTE cell.



37.     The Accused Products comprise a second broadcast information receiver for receiving broadcast information of one of the second cells including an individual parameter that is individually used for a judgment on cell selection of a second cell. For example, the Accused Products include second receiver circuitry that is configured to receive over unlicensed LTE

spectrum an individual parameter that is individually used for a judgment on cell selection of a second cell from an LAA cell.



38.     The Accused Products comprise a first broadcast information processor for reading the common parameter from the broadcast information of the first cell. For example, the Accused Products include a multi-core baseband processor, in which a processor core reads the common parameter from the broadcast information of the LTE cell.

39.     The Accused Products comprise a second broadcast information processor for reading the individual parameter from the broadcast information of the second cell. For example, the Accused Products include a multi-core baseband processor, in which a processor core reads the individual parameter from the broadcast information of the LAA cell.

40.     The Accused Products comprise a cell change controller for judging by the common and individual parameters whether to change a communication connection of the mobile terminal from the first cell to the second cell. For example, the Accused Products include a baseband processor programmed to judge using the common and individual parameters whether to change a communication connection from the LTE cell to the LAA cell

41.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

42.     At a minimum, HP has known of the '152 patent at least as early as the filing date of the complaint. In addition, HP has known about the '152 patent at least as early as October 28, 2021, when it met with SPV to discuss the patents-in-suit. Further, HP has known about the '152 patent since at least September 21, 2021, when HP acknowledged access to a data room providing notice of its infringement. Moreover, HP has been on notice of the '152 patent as a result of previous lawsuits filed by the Plaintiff against competitors of HP and other relevant market participants, such as ASUS.

43.     On information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '152 patent to directly infringe one or more claims of the '152 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, HP does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '152 patent. HP intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

44.     In the alternative, on information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '152 patent. For example, HP contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the Accused Products. To the extent that the Accused Products do not directly infringe one or more claims of the '152 patent, such products contain instructions, such as source code, that are especially adapted to cause the Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the Accused Products to utilize LAA in an infringing manner and are a material part of the invention of the '152 patent and are not a staple article of commerce suitable for substantial non-infringing use.

45.     On information and belief, despite having knowledge of the '152 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '152 patent, HP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HP's infringing activities relative to the '152 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

46.     SPV has been damaged as a result of HP's infringing conduct described in this Count. HP is, thus, liable to SPV in an amount that adequately compensates SPV for HP's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 8,442,569)

47.     Plaintiff incorporates paragraphs 1 through 46 herein by reference.

48.     SPV is the assignee of the '569 patent, entitled "Radio Reception Apparatus, Radio Transmission Apparatus, and Radio Communication Method," with ownership of all substantial rights in the '569 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

49.     The '569 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '569 patent issued from U.S. Patent Application No. 13/202,600.

50.     HP has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '569 patent in this judicial district and elsewhere in Texas and the United States.

51.     HP designs, develops, manufactures, assembles and markets mobile phones and other devices configured to connect to wireless cellular networks.

52.     HP directly infringes the '569 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '569 patent.

53.     For example, HP infringes claim 11 of the '596 patent via the Accused Products, which are configured to connect to wireless networks utilizing infringing LAA modems.

54.     The Accused Products implement the "[a] radio communication method in a radio reception apparatus which performs communication by using a plurality of resources defined in a frequency-time domain" of claim 11. Each of the Accused Products are mobile phones that receive

radio communication from an LTE cell. When operated in certain cellular networks, the Accused Products use a plurality of resources defined in a frequency-time domain.

55.    The Accused Products acquire distribution resource information for a second reference signal when the second reference signal for a second communication system is transmitted from a radio transmission apparatus in addition to transmitting a first reference signal for a first communication system, in a case where distributed type resources in which a resource unit defined in the frequency-time domain is divided in a time direction and distributedly allocated at predetermined frequency intervals are used as resources for the second reference signal. For example, the Accused Products include a modem that acquires distribution resource information ("DRS") as a reference signal for a SCell (e.g., LTE over unlicensed spectrum) from a radio transmission apparatus (e.g., a base station) that transmits reference signals for the SCell and a PCell (e.g., LTE over licensed spectrum). Distributed type resources used for the DRS have resource units defined in the frequency-time domain and are divided in a time direction and distributedly allocated at predetermined frequency intervals.

56.    The Accused Products receive a signal containing the second reference signal transmitted from the transmission apparatus. For example, the Accused Products include an LTE modem that contains an RF transceiver which is configured to receive the second reference signal from the transmission apparatus.

57.    The Accused Products measure a channel quality of a transmission channel by using the second reference signal that is allocated in the distributed type resources on the basis of the distribution resource information. For example, the Accused Products include an LTE modem and processor that measures a channel quality of a transmission channel by using the received DRS

from the LAA SCell. The Snapdragon mobile platform utilized in the Accused Products contains components for measuring a channel quality.

58.     The Accused Products transmit feedback information containing channel quality information indicative of the channel quality, to the transmission apparatus. For example, the Accused Products include an LTE modem that contains an RF transceiver which transmits feedback information containing channel quality information to the base station.

59.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

60.     At a minimum, HP has known of the '569 patent at least as early as the filing date of the complaint. In addition, HP has known about the '569 patent at least as early as October 28, 2021, when it met with SPV to discuss the patents-in-suit. Further, HP has known about the '569 patent since at least September 21, 2021, when HP acknowledged access to a data room providing notice of its infringement. Moreover, HP has been on notice of the '569 patent as a result of previous lawsuits filed by the Plaintiff against competitors of HP and other relevant market participants, such as ASUS.

61.     On information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '569 patent to directly infringe one or more claims of the '569 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, HP does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '569 patent. HP intends to cause, and has taken affirmative steps to

induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

62.     In the alternative, on information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '569 patent. For example, HP contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the Accused Products. To the extent that the Accused Products do not directly infringe one or more claims of the '569 patent, such products contain instructions, such as source code, that are especially adapted to cause the Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the Accused Products to utilize LAA in an infringing manner and are a material part of the invention of the '569 patent and are not a staple article of commerce suitable for substantial non-infringing use.

63.     On information and belief, despite having knowledge of the '569 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '569 patent, HP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HP's infringing activities relative to the '569 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant,

characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

64.     SPV has been damaged as a result of HP's infringing conduct described in this Count. HP is, thus, liable to SPV in an amount that adequately compensates SPV for HP's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **COUNT III**
### (INFRINGEMENT OF U.S. PATENT NO. 8,467,723)

65.      Plaintiff incorporates paragraphs 1 through 64 herein by reference.

66.     SPV is the assignee of the '723 patent, entitled "Base Station Apparatus, Mobile Apparatus, and Communication Method," with ownership of all substantial rights in the '723 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

67.     The '723 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '723 patent issued from U.S. Patent Application No. 13/585,621.

68.     HP has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '723 patent in this judicial district and elsewhere in Texas and the United States.

69.     HP designs, develops, manufactures, assembles and markets mobile phones and other devices configured to connect to wireless cellular networks.

70.     HP directly infringes the '723 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or

products containing the same that incorporate the fundamental technologies covered by the '723 patent.

71.     For example, HP infringes claim 9 of the '723 patent via the Accused Products that perform inter-RAT handovers and are configured to connect wireless cellular networks.

72.     The Accused Products implement the "communication method performed by a mobile station apparatus that belongs to a first area, which is covered by a base station apparatus employing a first Radio Access Technology (RAT), the first area including part or entirety of a second area which is covered by a host station employing a second RAT different from the first RAT" of claim 9. Each of the Accused Products is a mobile station that performs inter-RAT handovers, where the mobile station's radio connection is switched from a first base station (e.g., LTE eNB) that employs a first RAT (e.g., LTE) to a second base station (e.g., RNC/NodeB) that employs a second (and different) RAT (e.g., GERAN/UTRAN). RAT handover scenarios include handovers between E-UTRAN (LTE) and UTRAN or GERAN (both 3G).

73.     The Accused Products transmit, to the base station apparatus, notification information while the mobile station apparatus is using the first RAT when the mobile station apparatus detects that the mobile station apparatus is located in the second area while using the first RAT. For example, the Accused Products include a transmitter (e.g., an RF transceiver coupled to a RF front end and an antenna) to transmit notification information, e.g., measurement information, to the E-UTRAN eNB (i.e., the base station) which is using a first RAT (e.g., LTE). Such a transmission occurs when the mobile station detects that it is located in a second area (i.e., within a 3G radio cell while still connected to the LTE base station).

74.     The Accused Products perform a handover based on traffic control by the base station apparatus using the notification information. For example, the Accused Products have a

controller that is responsive to a handover message received from the LTE eNB, based on the notification information, i.e., the measurement information.

75.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

76.     At a minimum, HP has known of the '723 patent at least as early as the filing date of the complaint. In addition, HP has known about the '723 patent at least as early as October 28, 2021, when it met with SPV to discuss the patents-in-suit. Further, HP has known about the '723 patent since at least September 21, 2021, when HP acknowledged access to a data room providing notice of its infringement. Moreover, HP has been on notice of the '723 patent as a result of previous lawsuits filed by the Plaintiff against competitors of HP and other relevant market participants, such as TCL, Acer, ASUS, and LG.

77.     On information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '723 patent to directly infringe one or more claims of the '723 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, HP does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '723 patent. HP intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and

regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to the wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

78.     In the alternative, on information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '723 patent. For example, HP contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the Accused Products. To the extent that the Accused Products do not directly infringe one or more claims of the '723 patent, such products contain instructions, such as source code, that are especially adapted to cause the Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the Accused Products to perform LTE inter-RAT handovers in an infringing manner and are a material part of the invention of the '723 patent and are not a staple article of commerce suitable for substantial non-infringing use.

79.     On information and belief, despite having knowledge of the '723  patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '723  patent, HP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HP's infringing activities relative to the '723  patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

80.     SPV has been damaged as a result of HP's infringing conduct described in this Count. HP is, thus, liable to SPV in an amount that adequately compensates SPV for HP's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 8,792,453)

81.     Plaintiff incorporates paragraphs 1 through 80 herein by reference.

82.     SPV is the assignee of the '453 patent, entitled "Secure Tunnel Establishment Upon Attachment or Handover to an Access Network," with ownership of all substantial rights in the '453 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

83.     The '453 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '453 patent issued from U.S. Patent Application No. 13/126,924.

84.     HP has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '453 patent in this judicial district and elsewhere in Texas and the United States.

85.     HP designs, develops, manufactures, assembles and markets mobile phones and other devices configured to connect to wireless cellular networks.

86.     HP directly infringes the '453 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '453 patent.

87.     For example, HP infringes claim 1 of the '453 patent via the Accused Products, which are configured to connect to wireless cellular network.

88.     The Accused Products implement the "method for establishing a secure tunnel to a trusted packet data gateway upon a mobile node initially attaching to or performing a handover to a target access network" of claim 1. Each of the Accused Products are mobile phones that establish a secure tunnel to a trusted packet data gateway upon the mobile phone initially attaching to or performing a handover to a target access network. This occurs when the mobile phone establishes an IPsec tunnel with an evolved packet data gateway (ePDG) in a target access network.

89.     For example, the Accused Products determine from a reachability list maintained in the mobile node at least one trusted packet data gateway that is reachable through the target access network, wherein the reachability list lists data sets indicating data paths and the reachability status of respective known trusted packet data gateways for each respective data path. For example, the Accused Products are User Equipment ("UE"). Each Accused Product has a pre-configured list (i.e., reachability list) with non-3GPP access technologies, access networks, or serving network operators that allow for trusted non-3GPP IP access. The mobile phone receives an indication of whether the non-3GPP IP access is trusted or not. The reachability list lists data path indication, including and access point name and/or an access point IP address.

90.     The Accused Products establish a secure tunnel to the trusted packet data gateway determined from the reachability list maintained in the mobile node, the secure tunnel is established prior to the attachment to the target access network. For example, the 3GPP mobile phone establishes a secure IPsec tunnel to the trusted data packet gateway (ePDG) determined from the reachability list maintained in the mobile phone prior to attaching to the target access network

22

91.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

92.     At a minimum, HP has known of the '453 patent at least as early as the filing date of the complaint. In addition, HP has known about the '453 patent at least as early as October 28, 2021, when it met with SPV to discuss the patents-in-suit. Further, HP has known about the '453 patent since at least September 21, 2021, when HP acknowledged access to a data room providing notice of its infringement. Moreover, HP has been on notice of the '453 patent as a result of previous lawsuits filed by the Plaintiff against competitors of HP and other relevant market participants, such as TCL, Acer, ASUS, and LG.

93.     On information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '453 patent to directly infringe one or more claims of the '453 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, HP does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '453 patent. HP intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to wireless networking

features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

94.     In the alternative, on information and belief, since at least the above-mentioned date when HP was on notice of its infringement, HP has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '453 patent. For example, HP contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the Accused Products. To the extent that the Accused Products do not directly infringe one or more claims of the '453 patent, such products contain instructions, such as source code, that are especially adapted to cause the Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the Accused Products to establish secure tunnels in an infringing manner and are a material part of the invention of the '453 patent and are not a staple article of commerce suitable for substantial non-infringing use.

95.     On information and belief, despite having knowledge of the '453 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '453 patent, HP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. HP's infringing activities relative to the '453 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

96.     SPV has been damaged as a result of HP's infringing conduct described in this Count. HP is, thus, liable to SPV in an amount that adequately compensates SPV for HP's

infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

97.    Plaintiff SPV is entitled to recover from HP the damages sustained by Plaintiff as a result of HP's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

98.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

99.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

100.    Plaintiff respectfully requests that the Court find in its favor and against HP, and that the Court grant Plaintiff the following relief:

1. A judgment that HP has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by HP;

3.  A judgment and order requiring HP to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.  A judgment and order requiring HP to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.  A judgment and order finding this to be an exceptional case and requiring HP to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.  Such other and further relief as the Court deems just and equitable.

Dated: September 7, 2022

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 N. Harwood St.
Suite 250
Dallas, TX 75201
Tel: (817) 377-9111
pat@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 806-3808
murphy@nelbum.com

**Attorneys for Plaintiff**
**Sovereign Peak Ventures, LLC**